CHARLES CRAMER, Appellant, *v.* WILLIAM STETHEM, Respondent.

### February 14, 1876.

A and B, owning adjoining farms, procured a surveyor to ascertain and mark out the true line between them.   It was thus found that A had been occupying eleven acres belonging to B; but it was agreed that the fencing should not be moved until after the harvesting of the crops, A paying rent to B for part of the eleven acres, and B taking immediate possession of the residue.   A moved part of the division fence to the new line, and soon afterwards sold his farm to plaintiff, delivering possession.   B moved the remainder of the division fence to the new line, whereupon plaintiff sued him for forcible entry and detainer.   *Held,* that the plaintiff could not recover.   1. The limit of A's possession, as owner, being established at the agreed line, his vendee could not, by mere volition, extend it to the old line of occupancy, so as to make B a trespasser.   2. It was error to instruct the jury that the defendant's possession required the plaintiff's assent for its lawful continuance.

APPEAL from St. Louis Circuit Court.

*General term affirmed; special term reversed and cause remanded.*

*Kehr, Tittman & Tittman,* for appellant, cited: Henschen *v.* O'Bannon, 56 Mo. 289 ; Porter *v.* Harrison, 52 Mo. 524 ; Budd *v.* Hoffheimer, 52 Mo. 297 ; Marshall *v.* Thames

Fire Ins. Co., 43 Mo. 586 ; Prewitt *v.* Burnett, 46 Mo. 372 ; Bartlett *v.* Draper, 23 Mo. 407 ; King *v.* St. Louis Gaslight Co., 34 Mo. 34 ; Kincaid *v.* Logue, 7 Mo. 166.

*G. M. Stewart*, for respondent, cited : Kincaid *v.* Logue, 7 Mo. 166 ; Ruckwook *v.* Thorp, 8 Mo. 636 ; McCarty *v.* Alderson, 45 Mo. 35.

LEWIS, J., delivered the opinion of the court.

This is a case of forcible entry and detainer. Plaintiff obtained judgment before the justice, and was again successful before a jury in the Circuit Court, upon defendant's appeal. The last judgment was reversed in general term.

The testimony tended to prove that, for some years prior to 1870, the defendant and one Anderson owned and occupied adjoining farms, supposed to contain eighty acres each. The dividing line ran east and west, Anderson's farm lying on the north. In April or May, 1870, some doubt having arisen about the correctness of their recognized boundaries, the parties procured one Dorer to make a survey and establish the true dividing line. The survey showed that defendant had within his inclosure only sixty-nine acres. The true line was then distinctly marked by stakes, sufficiently far north of the old division fence to add a strip of eleven acres to the defendant's occupancy. The new line was acquiesced in by both parties ; but it was agreed that the fence should not be moved until after the harvesting of the crops. Anderson had planted some corn on the west end of the eleven-acre strip, and it was agreed that he should pay to defendant the customary rent therefor, being one-third of the crop. Defendant, with Anderson's consent, entered at once into possession of the remainder of the strip. He cut the meadow grass and established his hay-ricks up to the Dorer line, gathered the fruit from, and located his sorghum mill upon, the eleven-acre strip. The only objection raised by Anderson, was to the cutting of some grass north of the Dorer line. In the fall of 1870 Anderson moved part of the division fence, at the west end,

to a position north of the Dorer line, leaving space for half of a roadway which had been agreed upon to run between the two farms.  Soon afterwards he sold his farm to the plaintiff, and delivered possession.  In March, 1871, defendant moved the division fence to the Dorer line.  This removal constituted the subject-matter of the present suit.

The court, upon its own motion, gave to the jury the two following instructions, viz. :

1. " The court instructs the jury that it is not material whether the survey made by Dorer was correct or not, nor is it important in whom was the title to the eleven acres in dispute.  And, although Benjamin F. Anderson, the plaintiff's grantor, did not obtain, or even if he did not expect to obtain, from his neighbors on the north of his farm, possession of a like amount of land as that which said survey gave to the defendant, yet if said Anderson agreed to said survey, and if he consented to and permitted the defendant to cut the grass on one part of the eleven acres in dispute, and to gather fruit from the trees on another part of the same, and himself paid defendant rent for corn grown on another part thereof, and permitted defendant to place and use his sorghum mill thereon, then the defendant was in possession of the said eleven acres in controversy ; and if such possession continued—that is, if the same was unchanged by any act or by any conduct of the plaintiff, up to the time of the removal of the fence by defendant complained of—then the defendant is not guilty, and the verdict of the jury must be for the defendant."

2. " If the jury believe from the evidence that plaintiff purchased the farm of said Anderson, and if, at the time he so purchased the same and took possession thereof, the eleven acres in dispute was within the fence or inclosure of said farm, and if, in October or November, 1870, plaintiff moved onto and took possession of said farm, and if he did so claiming possession of all the land within the fence or inclosure thereof, including the land in contro-

versy, and so continued to claim up to the time of the removal of the fence by defendant complained of, then he was in possession of the land in dispute, and the verdict of the jury must be for the plaintiff, provided the jury also find from the evidence that the defendant did remove the fence and take forcible possession of the land in dispute as alleged."

Comparing these instructions, it would seem that by the second the court intended to inform the jury what "acts or conduct of the plaintiff" would so change the possession of defendant, under the hypothesis of the first instruction, as to deprive him of the conclusion in his favor which that instruction suggests. If the second states the law correctly, there is no want of harmony between the two.

If the defendant was in peaceable possession of the eleven-acre strip when he moved the fence to its northern boundary line, the plaintiff had no cause of action. Such possession, if it existed, was a fact—physical, practical, and visible. The limit of Anderson's possession in that case, at the same time, was a similar fact. To say that such facts could be annihilated by mere volition of the man who stepped into Anderson's place would be to insult the common understanding. Yet it seems difficult to avoid such a deduction from the theory adopted by the Circuit Court. There appears to have been a misapplication of the doctrine by which an owner's occupancy of part of a tract of land, under claim of title to the whole, is treated as a possession of the whole. This is available to protect an owner against trespassers, or to sustain a claim of adverse possession under the statute of limitations. But it has never been held to defeat an older and actual possession in another part of the land claimed. Defendant's possession of the eleven-acre strip was an existing fact when the plaintiff entered and asserted his claim. The latter could no more, by that assertion, extend his possession over the strip than

he could over the defendant's whole farm. Anderson's possession stopped at the Dorer line. He could deliver to the plaintiff no greater occupancy than he held himself, and the plaintiff could acquire no more by his substitution to Anderson's rights. It will not be pretended that Anderson, if he had never sold to plaintiff, could have maintained forcible entry and detainer against defendant for the removal of the fence. By what process does the plaintiff, upon his own mere assertion, become invested with rights superior to those of his grantor?

Fences and inclosures usually mark the boundaries of possession, but they have no exclusive capacity to such effect. A man having an inclosed field may sell part of it to his adjoining neighbor, and deliver possession, so as to include bodily the former division fence. From that moment he can assert no possessory rights whatever as to the fence, but must defer to his neighbor in all beyond the new dividing line. Thus the defendant, by the Dorer survey and his agreement with Anderson, followed by the transfer of actual possession and his own uninterrupted acts of ownership, acquired all the possessory rights, regardless of the location of the fence, which otherwise would have been retained by Anderson and his grantee, and which might then have been enforced in this proceeding.

The second instruction, therefore, and the qualifying condition in the first, so far as it refers to the facts supposed in the second, were erroneous.

A third instruction given was as follows:

"If the jury believe from the evidence that defendant acquired and held possession of the ground in dispute before the sale of the farm by Anderson to plaintiff, and if they also believe that, after the purchase of the farm by plaintiff, he assented to such possession by the defendant, then there was no change of defendant's possession, although the ground was within plaintiff's fence or inclosure."

. This also was erroneous, since it implied a necessity for plaintiff's assent to a fact already accomplished, and independent of his assent for its continuance or otherwise.

The action of the court upon the defendant's instructions need not be discussed here, since the principles already announced sufficiently indicate which of them ought to have been given, and which refused.

The judgment of the general term is affirmed, and that of the special term is reversed, and the cause remanded. The other judges concur.